IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

**JESUS RAMOS,**

       **Petitioner,**

v.                                                     Case No. 1:14-cv-27812

**BART MASTERS, WARDEN,**
FCI McDowell

       **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

On November 10, 2014, Jesus Ramos (hereinafter "Ramos") filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1). On November 20, 2014, after Petitioner paid the filing fee, the undersigned issued a show cause order. (ECF No. 6). Respondent filed a response to the show cause order, and Ramos has replied. (ECF Nos. 9, 12). This case is assigned to the Honorable David A. Faber, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Ramos's Petition for a Writ of Habeas Corpus and **DISMISS** this action, with prejudice, removing it from the docket of the Court.[1]

---

[1] Since filing the petition, Ramos has moved the Court to order him to file a reply memorandum, (ECF No. 10), and moved for final disposition, (ECF No. 15). The Court **DENIES** both of these motions as moot.

## I.     **Relevant History**

In the Spring of 2013, while he was incarcerated at Correctional Institution Taft ("CI Taft") in Taft, California, Ramos was the subject of two disciplinary proceedings. (ECF No. 2 at 1). The first proceeding stemmed from an incident report (#2412217) that was issued on February 20, 2013, charging Ramos with possession of a hazardous tool and possession of money or currency. (*Id.* at 7-9). Ramos was accused of having a cellphone charger that had been altered with a headphone connector, and a one-cent coin. (*Id.* at 8). After a hearing on the charge, Ramos was found guilty and penalized, in relevant part, by disallowance of 41 days of good conduct credit. (*Id.*). The second proceeding also involved a charge of possession of a hazardous tool (incident report # 2439921); this time, Ramos was accused on May 2, 2013 of having used a cellphone to contact a friend in Los Angeles. Once again, Ramos was found guilty of the violation and received another 41-day disallowance of good conduct credit. (*Id.* at 10-12).

At some point, Ramos was transferred to FCI McDowell in the Southern District of West Virginia and filed the instant petition seeking reinstatement of 82 days of good conduct credit. (ECF No. 1 at 6). Ramos asserts that CI Taft is operated by a private contractor, not by the Federal Bureau of Prisons ("BOP"), and CI Taft's employees are not BOP employees. Furthermore, Ramos claims that the Discipline Hearing Officers ("DHO") who punished him by disallowing 82 days of good conduct credit likewise were not employees of the BOP. Ramos argues that only a BOP officer is authorized to punish a federal inmate. Consequently, he complains that the disciplinary hearings and the penalties imposed at CI Taft violated his due process rights under the United States' Constitution. (*Id.* at 7, ECF No. 2 at 2-4).

Respondent answers the show cause order by asking the Court to dismiss Ramos's

petition as moot. (ECF No. 9). Respondent does not directly address Ramos's contention that the proceedings at CI Taft were unconstitutional because the DHOs had no legal authority to discipline him. Instead, Respondent argues that both of Ramos's incident reports were recently reheard by a BOP-employed DHO; therefore, the alleged due process violations at CI Taft were cured. According to Respondent, on rehearing, incident report #2412217 was expunged, and Ramos's 41 days of good conduct credit were restored. (*Id.* at 3). With respect to incident report #2439921, the BOP-employed DHO found Ramos guilty of possessing a hazardous tool and sanctioned him by disallowing 41 days of good conduct credit. (*Id.*) The DHO made this finding of guilt based upon the evidence collected at CI Taft, not the least of which was Ramos's admission that he used a cellphone several times in violation of facility regulations.

Respondent points out that Ramos received the relief he requested in regard to the first incident report, and had a rehearing on the second incident report before a BOP-employed DHO. Respondent maintains that, as a result of these measures, the alleged impropriety about which Ramos complains was entirely rectified. Accordingly, Respondent asserts that no live controversy remains between the parties, and the petition must be dismissed. (*Id.* at 4).

In reply, Ramos concedes that the two incident reports were reheard at FCI McDowell after Ramos filed the petition for habeas relief. Nonetheless, he argues that the rehearings did not fully remedy the constitutional violations he suffered at CI Taft. First, Ramos asserts that FCI McDowell had no right to conduct the rehearings given that the incident reports were not generated at FCI McDowell and, thus, the BOP-employed DHO "had no reason or authority to rehear the [prior] incident report(s), i.e., No.(s) 2412217 & 2439921." (ECF No. 12 at 3). Second, Ramos contends that the incident reports issued at

3

CI Taft should be vacated in their entirety, as they are *per se* invalid. Ramos emphasizes that under the applicable regulations, only BOP-employed staff can issue incident reports and only BOP-employed staff can investigate and hear them. In light of CI Taft's status as a private entity, the entire disciplinary process at that facility is unconstitutional. Ramos requests reinstatement of the remaining 41 days of good conduct credit taken first by the DHO at CI Taft and subsequently by the DHO at FCI McDowell. (*Id.* at 3).

## II.   Discussion

Article III, Section 2 of the United States' Constitution provides that federal courts may adjudicate only live cases or controversies. *See Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990); *Nakell v. Attorney General of North Carolina,* 15 F.3d 319, 322 (4th Cir. 1994). In other words, the "litigant must have suffered, or be threatened with, an actual injury traceable to the [respondent] and likely to be redressed by a favorable judicial decision." *Lewis,* 494 U.S. at 477 (citations omitted). "To be justiciable under Article III of the Constitution, a conflict between litigants must present a 'case or controversy' both at the time the action is filed and at the time it is decided. If intervening factual ... events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed,* 719 F.2d 689, 693-94 (4th Cir. 1983); *see also Arizonans for Official English v. Arizona,* 520 U.S. 43, 68, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) ("The requisite personal interest that must exist at the commencement of the litigation ... must continue throughout its existence") (citations omitted). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).

Clearly, there is no longer a "live" controversy over incident report #2412217, as the incident report has been expunged, and Ramos's 41 days of good conduct credit have been restored. Therefore, Ramos's claim on that report is moot. With respect to incident report #2439921, Ramos contends that a controversy remains as that incident report was not expunged and his good conduct credit was not restored. In Ramos's view, the circumstances surrounding the second incident report can only be considered resolved when that report is also expunged, and the entirety of his good conduct credit is restored. Accordingly, the undersigned will address the merits of Ramos's arguments regarding the second incident report.[2]

Taking Ramos's second argument first, the validity of an incident report issued by non-BOP staff at CI Taft has been discussed repeatedly by the United States District Court for the Eastern District of California, where CI Taft is located. The California District Court has roundly rejected Ramos's position that the mere issuance of an incident report by non-BOP staff is a constitutional violation. To the contrary, the Court has repeatedly held that an inmate challenging a disciplinary decision must demonstrate that the participation of non-BOP staff early in the process in some way fouled the outcome. *See, e.g., Alvarez-Tejada v. Benov,* No. 1:13-cv-02092, 2014 WL 3529782, at *2-3 (E.D. Cal. Jul. 14, 2014) (holding that inmate was unable to show prejudice from the participation of non-BOP personnel in the early stages of the disciplinary process); *Gonzalez v. Benov,* No. 1:13-cv-01989, 2014 WL 2524207, at *2-3 (E.D. Cal. Jun. 4, 2014) (same); *and Bolanos-Renteria v. Benov,* No. 1:14–cv–00488, 2014 WL 5817532, at *3 (E.D. Cal. Nov.

---

[2] The undersigned need not address the issue of whether the staff at CI Taft is authorized to issue, investigate, and hear incident reports, and discipline inmates. Respondent has not contested Ramos's assertion that the staff at CI Taft are not authorized to do so, and resolution of that issue would not dispose of the matter in controversy.

5

6, 2014) (same). District Judges in at least one other jurisdiction, when looking at this exact issue, agreed with the Eastern District of California, requiring the petitioner to demonstrate that "participation by non-BOP staff in the early stages of the disciplinary process somehow tainted" the decision made by a BOP-employed DHO. *See, e.g., Rodriguez-Puente v. Feather,* No. 3:14-cv-01939, 2015 WL 3514173, at *2 (D. Or. Jun 4, 2015); *and Topete v. Feather*, No. 3:14-cv-00677, 2014 WL 7237677, at *2 (D. Or. Dec. 15, 2014). The undersigned finds the reasoning of these courts to be persuasive. Consequently, in the absence of a showing by Ramos that he was prejudiced by the involvement of CI Taft staff early in the process, Ramos has no valid claim. Having closely reviewed Ramos's filings, the undersigned **FINDS** that he makes no such showing.

Similarly, Ramos's other argument—that the rehearing at FCI McDowell was inherently unconstitutional—lacks merit. Ramos does not allege that he was denied due process in the proceedings held at FCI McDowell; rather, he claims that FCI McDowell was precluded from hearing a disciplinary matter that did not occur at FCI McDowell. Ramos cites no statute, regulation, or case law to support his position. Indeed, contrary to Ramos's unsupported assertion, disciplinary rehearings are frequently conducted at BOP facilities different than the BOP facility at which the alleged infraction occurred. Inmates are routinely transferred from one facility to another. The mere occurrence of a transfer does not obviate the need to conclude hearings on an alleged infraction. *See Terry v. Zych,* No. 09-cv-12211, 2010 WL 931862, at *3 (E.D. Mich. Mar. 11, 2010) (finding that the BOP program statement "does not require that a warden may review only those disciplinary hearings conducted at warden's facility); *Russell v. Wilson,* No. 2:15cv51, 2015 WL 4479744, at *2 (E.D. Va. Jun. 17, 2015) (infraction at FCI Williamsburg reheard at FCI Texarkana); *Perotti v. Perdue*, No.: 1:14CV112, 2015 WL 5725810, at *1 (N.D.W.Va.

Sept. 30, 2015 (First disciplinary hearing was held at FCI Fairton, where incident occurred, while rehearing was held at FCI Leavenworth).

In conclusion, Ramos received the relief he requested on one of the two incidents forming the basis of this petition, and a BOP-employed DHO provided him with a rehearing on the second incident. Ramos makes no specific allegation that the manner in which the proceedings were conducted at FCI McDowell violated his right to due process. Moreover, Ramos's admission the he used a cellphone on several occasions in violation of facility regulations substantiates the second incident report and provides a solid foundation for the imposition of sanctions.

Accordingly, the undersigned **FINDS** that there is no live case or controversy in relation to the first incident report, and no factual basis to support a due process violation with respect to the second incident. Therefore, Ramos's petition for a writ of habeas corpus should be dismissed.[3]

## III.  Proposal and Recommendations

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1) be **DENIED,** and this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section

---

[3] Even if there were merit to Ramos's arguments on the second incident report, his petition will soon be mooted by his release from custody. According to the BOP inmate locator, Ramos is scheduled for release on November 1, 2015.

7

636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Faber and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner and Respondent.

**FILED**: October 20, 2015

_____
Cheryl A. Eifert
United States Magistrate Judge